PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**PATEL | STILWELL, LLP**
ANDREW R. STILWELL, ESQ. (CBN: 229469)
3160 Camino Del Rio South, Suite 313
San Diego, CA 92108
Telephone: (619) 940-6623
Email: AStilwell@PatelStilwell.com

Attorneys for Plaintiff,
GARY KOOBA.

**UNITED STATES DISTRICT COURT**

**FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY KOOBA,<br><br>Plaintiff,<br><br>vs.<br><br>SELENE FINANCE, LP, a Texas limited partnership; BANK OF AMERICA, N.A., a North Carolina corporation, as successor in interest to COUNTRYWIDE BANK, F.S.B., and successor by merger to BAC HOME LOANS SERVICING , L.P., which was a successor in interest to COUNTRYWIDE HOME LOANS SERVICING, L.P.; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a Virginia corporation; RECONTRUST COMPANY, N.A., a California based national association; THE WOLF FIRM, a California corporation; WILLMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, as trustee for CERTIFICATE HOLDERS OF THE BCAT 2015-14BTT, a Delaware REMIC; JANET KOOBA, an individual with an interest | Case No. 2:17-CV-02127<br><br>COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF.<br><br>DEMAND FOR JURY TRIAL MADE |

in the subject property; and DOES 1-10 inclusive,

Defendants.

GARY KOOBA (hereafter "Plaintiff) alleges as follows:

**JURISDICTION**

**Federal Question Jurisdiction**

1. Plaintiff asserts this Court's federal question jurisdiction, codified in 28 U.S.C. § 1331, on the basis that there are several questions arising under federal laws, including without limitation violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.); Truth In Lending Act (15 U.S.C. §§ 1640-1641); Fair Credit Reporting Act (15 U.S.C. § 1681s-2), and the Internal Revenue Code regulation Real Estate Mortgage Investment Conduit (REMIC) Trust (26 U.S.C. §§ 860D, 860F, and 860G, as well as their corresponding Treasury Regulations).

**Diversity Jurisdiction**

2. As a separate claim to, Plaintiff' assertion of federal question jurisdiction, Plaintiff asserts federal diversity jurisdiction on the basis that at each Defendant is jurisdictionally diverse from Plaintiff' California domicile, and the amount in controversy exceeds $75,000.00.

**Supplemental Jurisdiction**

3. Additionally, Plaintiff also asserts this Court's supplemental jurisdiction over all issues of state law mentioned herein on the basis that those state issues arise from the same facts and circumstances as the acts alleged herein warranting federal jurisdiction over this Complaint.

**VENUE**

4. The United States District Court for the Central District of California, Western Division is the appropriate and proper venue for this action, on the basis that all contracts signed by Plaintiff and acts giving rise to a cause of action described herein were completed and committed in Torrance, California.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

## PARTIES

5. Plaintiff is, and was at all times mentioned herein, an individual resident of Los Angeles County, California.

6. Defendant, SELENE FINANCE, L.P. ("SELENE"), is, and at all times herein mentioned was, a Texas limited partnership. At all times mentioned herein SELENE has maintained a principle place of business located at 9990 Richmond Avenue, Suite 400 South Houston, TX 77042-8500, and has sufficient contacts with California by SELENE's servicing of residential mortgages in this forum.

7. Defendant, BANK OF AMERICA, N.A., as successor in interest to COUNTRYWIDE BANK, F.S.B., and successor by merger to BAC HOME LOANS SERVICING , L.P., which was a successor in interest to COUNTRYWIDE HOME LOANS SERVICING, L.P. ("BANA"), is, and at all times herein mentioned was, a North Carolina corporation. At all times mentioned herein BANA has maintained a principle place of business located at 150 North College Street; NC1-020-17-06, Charlotte, NC, 28255. BANA has sufficient contacts with California by its thousands of banking branches in this forum, as well as BANA owns thousands of residential mortgages, or servicing rights to thousands of residential mortgages in this forum.

8. Plaintiff is informed and believes, and thereupon alleges that Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS"), is, and was at all times mentioned herein, a Virginia corporation, having its principle place of business at 1818 Library Street, Suite 300, Reston, VA 20190.

9. Defendant, RECONTRUST COMPANY, N.A. ("RECONTRUST"), is, and was at all times herein mentioned, a California based national association, whose principle place of business is and was 225 West Hillcrest, MSN TO-02, Thousand Oaks, California 91360.

10. Defendant, THE WOLF FIRM ("WOLF"), is, and at all times herein mentioned was, a California corporation. At all times mentioned herein Wolf has maintained a principle place of business located at 2955 Main Street, Second Floor, Irvine, CA 92614.

11. Plaintiff is informed and believes, and thereupon alleges that, Defendant, WILLMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, as trustee for CERTIFICATE HOLDERS OF THE BCAT 2015-14BTT (the "REMIC"), is, and at all times herein mentioned was, a Delaware REMIC trust as defined by 26 U.S.C. § 860D, and its corresponding treasury regulations. At all times mentioned herein REMIC has maintained a principle place of business located at 500 Delaware Avenue, 11th Floor, Wilmington, DE, 19801. REMIC has sufficient contacts with California by virtue of its holding, owning, and enforcing thousands of residential mortgages in this forum.

12. Defendant, JANET KOOBA ("JANET"), is, and was at all times mentioned herein, an individual living within the County of Los Angeles, California, and had and has an interest in the real property located at 101 Via Pasqual, Redondo Beach, CA 90277.

13. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant designated herein is or was the agent, partner, employee, co-developer, joint-venturer, subcontractor, consultant, and/or supplier of each of the remaining Defendants, and was at all times herein mentioned, acting within the course and scope of said agency and employment.

14. Plaintiff is informed and believes and thereon alleges that the Defendants and each of them, and DOES 1 through 10, inclusive, were in some manner negligently or otherwise tortuously responsible for the events and happenings hereinafter alleged, and that each are vicariously liable for the acts of each other.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

15. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said unknown Defendants, and each of them, by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to insert the true names and capacities of fictitiously named Defendants when same has been ascertained. Plaintiff is informed and believes and, based upon such information and belief alleges, that each Defendant herein designated as a "DOE" herein is legally responsible in some manner for the acts, occurrences, damages and liabilities hereinafter alleged, and actively and passively caused and contributed to the various injuries and damages referred to herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Ownership Prior to the Loan Origination

16. On March 7, 2008, Plaintiff acquired the real property located at 101 Via Pasqual, Redondo Beach, CA 90277 (the "Property") via grant deed executed by CG BUILDING GROUP, LLC. The grant deed was recorded in the Los Angeles County Recorder's Office on June 18, 2008 as document number 2008-1081338.

17. The legal description for the Property is:

> LOT 81 OF TRACT NO. 19305, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 526 PAGES 12 TO 16 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. APN: 7512-020-028.

18. At all relevant times, Plaintiff has occupied the Property as their home and primary residence, and the Property consists of only one dwelling unit.

19. At all relevant times, Plaintiff has been the fee simple owner of the Property.

///

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**The Loan Origination**

20. Three months later, on June 11, 2008, Plaintiff executed a secured promissory note ("Note"), and a deed of trust ("DoT"), which purported to secure the Note by the Property. The DoT was recorded in the Los Angeles County Recorder's Office as document number 2008-1081339 on June 18, 2008. The DoT and the Note are hereafter jointly referred to as the "Mortgage." The Mortgage was made only for personal, family, or household purposes.

21. The parties to the DoT were Plaintiff, and his wife JANET, as trustors, RECONTRUST as trustee, MERS as beneficiary, and COUNTRYWIDE BANK, FSB ("COUNTRYWIDE") as "Lender."

**Allegations Specific To MERS Common to All Causes of Action**

22. Although MERS was described in the DoT as the "Beneficiary," the DoT limited MERS's authority solely as "Nominee" for the Lender. California courts have routinely ruled that this designation as "Nominee" limits MERS's ability to act down to only actions taken within the scope of MERS's agency, and that MERS can only act at the direction of the Lender or their successors and assigns.

23. Further, MERS is a private company, and enters into these "Nominee" relationships with lenders only through private contract. Without such privity between MERS and the lender it is purporting to action on behalf of, MERS then has no authority to act on behalf of the lender under the DoT.

**Recording of the DoT Was Not a Privileged Communication**

24. Plaintiff alleges that this recording was done by COUNTRYWIDE without reasonable grounds to believe in the validity of the DoT because it was the product of an illegal table-funded loan originated and perpetrated by COUNTRYWIDE against Plaintiff with reckless disregard for Plaintiff' rights or for the economic damage that the DoT would cause to Plaintiff' Property. BANA, as the successor in interest to COUNTRYWIDE, is subject to the prior acts of their

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

predecessor. Plaintiff therefore alleges that the recording of the DoT does not qualify as privileged publications under California Civil Code section 47.

**The Deed of Trust**

25. The DoT is a three-party contract, to which each party made certain covenants to each other, and which each party has standing to enforce against the others.

**A. Transfer of the Note & DoT**

26. Section 20 of the DoT states in pertinent part that:

> "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Agreement, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing."

27. Implied in this contractual agreement to transfer the Note and DoT without prior notice is an agreement than any such transfer would not violate any federal or state law or regulation, or violate any pre-existing contract. It was never Plaintiff's intention to authorized any unnoticed transfer of either the Note or the DoT, which would case the transfer to violate any federal law, state law, federal regulation, state regulation, or pre-existing contract between the parties thereto or any of the parties and a third-party.

///

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**B. Notice of Intent to Accelerate**

28. Section 22 of the DoT states in pertinent part:

> "Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument …. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

**Table-Funding by Pass-Through Securitization**

29. From 2000 to 2010, lenders across the nation, including COUNTRYWIDE, originated trillions in mortgage loans. The ballistic ascent of the lending industry's ability to originate so many mortgages was primarily due to the ability to "securitize" the mortgages into privately held investment conduits that allowed them to draft their own underwriting guidelines. No longer hindered by the rigors of federal agency underwriting guidelines, the lending industry could literally underwrite any type of loan they wanted, and they did.

30. "Securitization" is the process of pooling enormous amounts of capital for the purpose of funding mortgages, which are held in special purpose

entities ("SPE"), that supported the issuance of securities to the security markets for sale to the general public. These SPE's were utilized to anonymously fund mortgages through the usage of an "originator." Originators held themselves out as the actual lender to the borrower, but were really only originating the mortgage and funded it through the anonymous SPE's capital.

31. The originators would then instantaneously equitably transfer the Note to the SPE to back the mortgage-backed security (although the volume often slowed the paper documentation of the transfer), and the DoT would be recorded in the local county recorder's office and transferred to MERS, who would act at the specific direction of the SPE.

32. Because the mortgages were immediately securitized to the SPE, they were not owned by the originator, and the mortgages would either show up as sold on the originator's balance sheet, or not show up at all. The key indicator of these transactions would be the presence of a yield-spread income and/or servicing income from the loan, which were routinely placed on a publicly traded originator's SEC financial filings. COUNTRYWIDE was a publicly traded company that substantially acted as an originator for the massive SPE's that supported the mortgage-backed bond market.

**Table Funding**

33. The process of posing as the funding lender, while actually acting as a broker and importing the funding to close a lending transaction is known as "table funding." The securitization process as described above is table-funding because the originator places themselves on the Note and DoT as the "Lender," when the mortgage was actually anonymously funded by the SPE.

34. Although table-funding is legal for all commercial transactions in California, the Legislature specifically made encumbering residential property with table-funded loans illegal with the passage of AB 1203 in 1998, which became California Business and Professions Code section 10234.

35. Plaintiff is informed and believes, and thereupon alleges, that COUNTRYWIDE, while registered with the then California Department of Real Estate as a loan originator, and acting in that capacity, table-funded the Note herein by acting as the originator who anonymously funded the Note from a securitized SPE.

36. COUNTRYWIDE then listed itself as “Lender” in the DoT, which purported to encumber a residential property, i.e. the Property, to the table-funded Note.

37. COUNTRYWIDE, with knowledge of California’s ban on encumbering residential property with table-funded loans, did record the DoT in the Los Angeles County Recorder’s Office on June 18, 2008, and illegally encumbered the Property in violation of Business and Professions Code section 10234.

**The Deed of Trust is Void as an Illegal Contract**

38. The recording of the DoT on the Property was illegal and contrary to the expressed words of Business and Professions Code section 10234.

39. By violating Business and Professions Code section 10234 the DoT became an illegal contract under California Civil Code sections 1592 and 1608, because it was the object and consideration to an illegal transaction. The DoT herein therefore became void on its recording date, which was June 18, 2008.

40. Therefore, the Mortgage has been unsecured since June 18, 2008, and without a valid security instrument on title, neither COUNTRYWIDE, MERS, nor RECONTRUST, nor any of their successors or assigns, including BANA, REMIC, or WOLF, have any authority to foreclose on the Property.

**Undisclosed Assignment of the Deed of Trust**

**Assignment 1 – MERS to BAC**

41. Despite the fact that the DoT has been a void nullity since June 11, 2008, on June 22, 2011, MERS executed an Assignment of Deed of Trust

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

("Assignment 1") purporting to assign the "all beneficial interest" in the DoT "together with the note(s) and obligations therein" to BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP ("BAC"). The Assignment 1 was recorded on June 30, 2011 in the Los Angeles County Recorder's Office as document number 2011-0887397.

42. The Assignment 1 was executed on June 22, 2011 by SWARUPA SLEE, in her alleged capacity as "Assistant Secretary" to MERS. However, MERS executed the Assignment 1, not as nominee for COUNTRYWIDE, but in its own individual capacity. The Assignment 1 specifically states that "the undersigned holder of the Deed of Trust…," and the signature block specifically states, "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." Nowhere does the Assignment 1 indicate that MERS is acting in its capacity as nominee for COUNTRYWIDE, who is the actual holder of the interest being transferred.

43. By 2011, COUNTRYWIDE no longer existed, and under California agency law, MERS's authority ceased to exist when COUNTRYWIDE finished its merger with BANA in late 2008. There is no indication within the Assignment 1 that BANA has any agency relationship with MERS, nor is MERS purporting to act on behalf of BANA, or even COUNTRYWIDE. MERS is, by its own admission in both the body and signature block of the Assignment 1, acting in its own capacity.

44. California courts have uniformly held that MERS's authority to act under the DoT herein, and identical DoTs in other cases, is limited only to its agency capacity and at the direction of its principle. Since, there is no indication that MERS had any agency relationship with BANA at the time of the execution of the Assignment 1, and COUNTRYWIDE had been a non-existent entity for more than a year at the time, Plaintiff is informed and believes, and thereupon alleges that the Assignment 1 is void due to its signatory not having any authority or capacity to execute the document.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

45. Furthermore, Plaintiff alleges that the Assignment 1 is void, because it is attempting to assign something that does not exist. By the time the Assignment 1 is executed, the DoT had been void for over three (3) years. A void document is a legal nullity without any legal effect, and the assignment of which is also a legal nullity without any legal effect. Therefore, Plaintiff is informed and believes and thereupon alleges that the Assignment 1 is void, and failed to transfer anything to BAC.

**Assignment 2 – BANA to SELENE**

46. Despite the fact that the DoT has been a void nullity since June 11, 2008, on September 28, 2015, SELENE executed an Assignment of Deed of Trust ("Assignment 2") purporting to assign the "all beneficial interest" in the DoT "together with the note(s) and obligations therein" to the REMIC. SELENE executed the Assignment 2 in its capacity as "attorney-in-fact" for BANA S/B/M BAC, and even listed the recording information for which they claim their capacity to make such an assignment. The Assignment 2 was then recorded on October 20, 2015 in the Los Angeles County Recorder's Office as document number 2015-1288188.

47. In clear contrast to the Assignment 1, SELENE indicated that it was acting in its agency capacity to BANA, and indicated how BANA had succeeded in interest to BAC. SELENE went even as far as to list the exact location of the power of attorney for which it was claiming its agency power, "Power of Attorney recorded in Miami-Dade County, Florida as CFN: 20150607777, Book: 29784, Page: 2935."

48. Despite the well drafting of the agency relationship, which MERS failed to do in Assignment 1, SELENE is claiming an agency relationship to BANA as its principle. BANA is claiming its right by successor in interest to BAC, however, as alleged above, BAC did not obtain any right to the DoT. Since, BAC did not have any actual vested interest in the DoT, BANA could not succeed into

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

any interest, and thereby SELENE's agency did not empower SELENE to transfer what BANA did not actually have an interest in.

49. Further, by the time the Assignment 2 is executed, the DoT had now been void for over seven (7) years. A void document is a legal nullity without any legal effect, and the assignment of which is also a legal nullity without any legal effect. Therefore, Plaintiff is informed and believes and thereupon alleges that the Assignment 2 is void, and failed to transfer anything to the REMIC.

50. Additionally, the REMIC is an entity of statutory creation and subject to the rules and regulations of the federal laws, including the Internal Revenue Code. The BCAT 2015-14BBT REMIC trust closed prior to the Assignment 2. Additionally, by the time of the execution of the Assignment 2, the underlying Note had been declared in default by RECONTRUST more than four (4) years ago. Both the transfer of a defaulted mortgage and the transfer to a REMIC after its closing date violate 11 U.S.C. § 860F. The result of such a violation subjects all of the income of the REMIC to 100% taxation, instead of its complete tax-fee status.

51. This transfer in violation of section 860F further subjects the certificate-holders to taxation and damages, that Plaintiff can be subject to lawsuit for as a party to the DoT. This transfer violates federal law and regulations, and therefore violates the terms of the DoT in that Plaintiff did not agree to any transfers that violated any laws, regulations, or contractual obligations (i.e., the trust agreement with the REMIC and its certificate-holders).

**The Loan Servicing**

52. Plaintiff is informed and believes that, at all relevant times, SELENE has been the mortgage loan servicer of the Mortgage, a first-lien mortgage on the Property.

///

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**The Loan Modification History**

53. Beginning in the fall of 2008, the federal government instituted several measures to try to stabilize the housing and credit markets and assist troubled homeowners, including the Home Affordable Modification Program ("HAMP").

54. As a mortgage servicer, SELENE regularly conducted or managed loss mitigation and foreclosure of single family residences on behalf of entities that hold pools (i.e. trusts) of mortgage loans, including REMIC. Plaintiff is informed and believes, and thereupon alleges, that REMIC does not participate in the HAMP program. Investors who do not participate in HAMP offer loan modification assistance under private investor programs ("PIPs").

55. For years, Plaintiff duly made his monthly payment for the Mortgage. While still current on the Mortgage, Plaintiff requested a modification of the Mortgage from SELENE. Rather than properly review Plaintiff' requests, and acting with reckless disregard for Plaintiff's rights, SELENE told Plaintiff that he had to default on the Mortgage and intentionally miss multiple months of payments on the Mortgage as a prerequisite to obtaining an affordable modification.

56. Plaintiff is now informed and believes that those representations by SELENE were false and SELENE either knew the representations were false at the time they were made or made the representations with reckless disregard for whether it was false.

57. In reliance on the representations, Plaintiff followed SELENE's instructions and defaulted on the regular payments on the Mortgage.

58. Meanwhile, after stopping his payments as requested by SELENE, Plaintiff duly, timely, and completely and repeatedly submitted all appropriate documentation to apply for a loan modification of the Mortgage. Plaintiff is informed and believes and thereupon alleges that SELENE requested a HAMP

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

modification of REMIC, notwithstanding the fact that SELENE knew that REMIC did not participate in the HAMP program.

59. Further, Plaintiff is informed and believes and thereupon alleges that SELENE requested a HAMP modification despite the fact that Plaintiff's unpaid principle balance on the Property exceeded the amount allowed under the HAMP guidelines. The HAMP guidelines are published and readily available to SELENE, and Plaintiff therefore is informed and believes and thereby alleges that SELENE had the disqualifying information at its fingertips and could have notified Plaintiff of his disqualifying status within minutes. However, instead, SELENE drug the modification process on for years, constantly encouraging Plaintiff that at some point in time he would receive a modification.

60. Years went by, and Plaintiff kept on trying to modify the loan with SELENE, and finally, on December 16, 2016, SELENE provided Plaintiff with a Trial Modification Agreement ("TMA").

61. The terms of the TMA were as follows:

a. Plaintiff was to pay $19,656.06 upon the execution of the TMA;

b. Plaintiff would pay $9,8338.03 per month for the following six months.

62. Plaintiff's total monthly payment on the Mortgage that he was trying to modify with SELENE was $8,975.95.

63. This offer came after years of disclosure to SELENE that Plaintiff could not afford the current payment, yet response was to offer a trial modification with a $20,000.00 initial payment and six months of monthly payments at a rate $1,000.00 more per month than what Plaintiff had already disclosed that he could not afford, and was seeking assistance to modify.

64. Additionally, SELENE taunted Plaintiff in its cover to the TMA stating that the TMA was Plaintiff's "opportunity to prove that [he] wants to keep

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

the property and can afford to do so." This statement, taken in conjunction with the unconscionable payment terms of the TMA, reasonably led Plaintiff to believe that SELENE was purposefully attempting to wear him down into rejecting the modification terms so that SELENE would not have to reject Plaintiff's valid application.

65. Further, the TMA stated that should Plaintiff actually pay the impossible amount, Plaintiff would get a permanent modification, but if for some reason he did not or SELENE was to delay, that Plaintiff was obligated to pay the exorbitant amount indefinitely until SELENE got around to completing the paperwork for the permanent modification.

66. Meanwhile, SELENE regularly lost or misplaced Plaintiff' paperwork, and made repeated requests for the same information, thereby causing further delay in Plaintiff's efforts related to his requested loan modification application.

67. After the many years it took SELENE to provide the TMA, Plaintiff was further discouraged into entering into the TMA. Plaintiff began to consider the propriety of starting the impossible payment that everyone knows Plaintiff cannot afford, just so that SELENE could continue to drag its feet without any light at the end of the tunnel, and cause Plaintiff to stumble into default so that SELENE could claim it was Plaintiff's fault all along.

68. If the impossible payment and taunting language was not enough, SELENE added language that the foreclosure would not stop or be rescinded, but would stay on hold as a massive coercion pointed at Plaintiff's head. The clause threatens Plaintiff that should he default, that SELENE would immediately execute a foreclosure against the Property "without any further notice to borrower."

69. SELENE also made false representations in the TMA to induce Plaintiff to enter into the TMA. SELENE represented that they were the servicer for the note holder, however the Note and DoT failed to be transferred to the

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

REMIC as described above. SELENE represented that the "Property secures the loan," however, the DoT had been void for more than eight (8) years, and SELENE knew or should have known that from a review of title. SELENE represented that the "Borrower is in default of the Note and the Security Instrument," when they were the ones in default of the Note and Security Instrument by the illegal transfer to the REMIC in violation of federal law and the transfer provisions within the DoT. Additionally, since the DoT was void, Plaintiff could not have been in default of something that does not exist or lacks legal meaning.

70. The anti-encumbrance provisions of Business & Professions Code section 10234 was lobbied for and presented to the legislature by the banking industry. The law was enrolled, and on public notice. Further, all of the evidence indicating the illegality of the DoT's encumbrance was public title record. SELENE knew about its provisions, yet made these representations to SELENE to induce Plaintiff to either enter into the unconscionable TMA or to break his will to modify.

71. Plaintiff was given two weeks to review the TMA and return it executed to SELENE. SELENE refused to negotiate any of the language within the TMA, and told Plaintiff that the TMA was a "take it or leave it deal." By this, Plaintiff is informed and believes and thereupon alleges that the TMA was a contract of adhesion.

72. By demeaning Plaintiff and demanding such overtly impossible repayment terms, SELENE hoped to avoid the additional 30-day right to appeal a servicer's rejection by causing Plaintiff to give up.

73. As a result, Plaintiff has not only been denied a fair and meaningful opportunity to obtain a modification of the Mortgage, but has been subjected to an unconscionable adhesion contract.

74. SELENE's deal was no deal, and specifically intended to harm Plaintiff. SELENE acted with conscious disregard for Plaintiff and the emotional,

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

financial, and physical harm it was causing to Plaintiff, and did not act in good faith.

75. In reliance on SELENE's representations, Plaintiff is informed and believes that SELENE was providing mortgage modification assistance, and they continued to submit paperwork to SELENE as requested with the expectation that SELENE was applying for the appropriate loan modification program with REMIC.

76. If this was not enough, SELENE placed a provision in the TMA authorizing SELENE to act as a mortgage broker on behalf of Plaintiff "authorizing SELENE to share information about the loan and Borrower's financial information with lenders who may offer Borrower a new loan," however, SELENE further contradicted their earlier prerequisite of delinquency and alleged offer to assist Plaintiff in refinancing the Mortgage by continually furnishing information to the credit reporting bureaus that Plaintiff was in default on the Mortgage. As a result, Plaintiff' credit score suffered, and all of Plaintiff's subsequent credit applications have been denied, causing him economic injury.

77. SELENE could have done little more to destroy Plaintiff's opportunity at a reasonable loan modification, and instead perpetrated upon him the most intentional campaign of pain and suffering upon him to destroy his resolve and willingness to modify his loan, instead of promptly and forthrightly informing Plaintiff of his inability to qualify for HAMP and their internal decision not to modify Plaintiff's loan.

**The Current Foreclosure Status**

78. The power to sell a property through a nonjudicial foreclosure is a contractual right granted to the trustee of a deed of trust, but the contractual power of sale is limited by a statutory nonjudicial framework codified in Civil Code sections 2924 et. seq.

///

79. Under the statutory framework, nonjudicial foreclosure is initiated by the execution and recording of a notice of default. Under the power of sale in the DoT, the lender or the beneficiary must provide Plaintiff, as a condition precedent to the exercising the power of sale, with a notice of intent to accelerate 30 days prior to the execution or recording of a notice of default. Neither COUNTRYWIDE, BAC, nor MERS ever gave Plaintiff a notice of intent to accelerate. Without this notice, neither COUNTRYWIDE, BAC, MERS, nor RECONTRUST had any right, power, or authority to exercise the power of sale clause in the DoT.

80. Further, the fact that the DoT itself was void as illegal meant that there was no power of sale in existence at the time any of the below described foreclosure acts took place.

**RECONTRUST Illegally Files 4 False Notices of Trustee Sale**

81. On November 17, 2011, while the Mortgage was alleged to have been held by BAC, RECONTRUST executed a Notice of Trustee Sale ("Recontrust NoTS 1"), and recorded it in the Los Angeles County Recorder's Office on November 23, 2011 as document number 2011-2593379. However, RECONTRUST had never executed or recorded the mandatory prerequisite notice of default against the Property. Without the execution and recording of a notice of default, RECONTRUST did not have the authority or power to execute or record the Recontrust NoTS 1.

82. The filing of the Recontrust NoTS 1 placed the Property in a "distressed" status on title, and instantly caused a substantial decrease in the Property's value.

83. On November 5, 2012, still without satisfying the condition precedent of a notice of intent to accelerate, still without a valid contractual power of sale, and still without the prerequisite notice of default, RECONTRUST executed a Notice of Trustee's Sale ("Recontrust NoTS 2"), and recorded it in the Los Angeles



PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

County Recorder's Office on November 7, 2012 as document number 2012-1693607. The execution and recording of the Recontrust NoTS 2 continued the depression of the Property's value. RECONTRUST had no authority, power, or right to execute or record the Recontrust NoTS 2.

84. On May 3, 2013, still without satisfying the condition precedent of a notice of intent to accelerate, still without a valid contractual power of sale, and still without the prerequisite notice of default, RECONTRUST executed a Notice of Trustee's Sale ("Recontrust NoTS 3"), and recorded it in the Los Angeles County Recorder's Office on May 7, 2013 as document number 2013-0681894. The execution and recording of the Recontrust NoTS 3 continued the depression of the Property's value. RECONTRUST had no authority, power, or right to execute or record the Recontrust NoTS 3. As notices of trustee's sales are valid for one year, Plaintiff is informed and believes and thereupon alleges that RECONTRUST's execution and recording of the Recontrust NoTS 3 was for the sole purpose of harassing Plaintiff and causing him undue hardship.

85. On August 1, 2013, still without satisfying the condition precedent of a notice of intent to accelerate, still without a valid contractual power of sale, and still without the prerequisite notice of default, RECONTRUST executed a Notice of Trustee's Sale ("Recontrust NoTS 4"), and recorded it in the Los Angeles County Recorder's Office on August 5, 2013 as document number 2013-1143972. The execution and recording of the Recontrust NoTS 4 continued the depression of the Property's value. RECONTRUST had no authority, power, or right to execute or record the Recontrust NoTS 4. As notices of trustee's sales are valid for one year, Plaintiff is informed and believes and thereupon alleges that RECONTRUST's execution and recording of the Recontrust NoTS 4 was for the sole purpose of harassing Plaintiff and causing him undue hardship.

86. Because of these four (4) notices of trustee sale, RECONTRUST successfully kept Plaintiff's Property value depressed for three years without any

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

right, authority, or legal power to do so. Plaintiff is informed and believes and thereupon alleges that the continued filing of foreclosure documents by RECONTRUST and BAC was part of a coordinated strategy to keep the Property's value depressed due to the "distressed" status in order to keep Plaintiff from being able to modify the Mortgage or sell the Property.

**BANA Appears From Nowhere and Clouds Title**

87. On May 12, 2014, WOLF, on behalf of BANA, executes a notice of default (the "NoD"), and recorded the NoD in the Los Angeles County Recorder's Office on May 30, 2014 as document number 2014-0558435. In the NoD, WOLF states that it is the trustee under the DoT, and that BANA is the beneficiary under the DoT.

88. However, a substitution of trustee replacing RECONTRUST with WOLF was never executed or recorded on the Property's title. The lack of the substitution of trustee negates WOLF from having any power or authority to act as trustee of the DoT. It is on this information and belief that Plaintiff alleges that WOLF was not the duly authorized trustee under the DoT, and was therefore not authorized to execute and record the NoD against the Property's title.

89. Further, the original beneficiary of the DoT was MERS as nominee for COUNTRYWIDE. MERS failed to transfer the DoT to BAC in the fatally flawed Assignment 1, and even if the Assignment 1 were valid (which it is not), there was not an assignment from BAC to BANA, which is required by the California Statute of Frauds to transfer rights (including the right to sell the Property) to another party. It is on this information and believe that Plaintiff alleges that BANA was not the beneficiary of the DoT, and could not authorize WOLF to execute and record the NoD against the Property's title.

90. Additionally, as stated above, the DoT itself had been void for more than six (6) years at this time, and therefore, there was no power of sale for either BANA or WOLF to execute.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

91. Without a valid substitution of trustee placing WOLF on title as the trustee to the DoT, or a valid assignment transferring the beneficial interest of the DoT to BANA, the recording of the NoD against the Property's title had created a cloud on the Property's title, and thereby has caused the Property's value to further significantly decrease. Additionally, the filing of the NoD itself further "distressed" the status of the Property's title, and instantly caused another substantial decrease in the Property's value.

92. On September 2, 2014, still without a valid substitution of trustee, still without a valid assignment of the beneficial interests in the DoT to BANA, and still without a valid DoT containing a power of sale, WOLF executed a Notice of Trustee's Sale ("WOLF NoTS 1"), and recorded it in the Los Angeles County Recorder's Office on September 3, 2014 as document number 2014-0921903.

93. Neither WOLF nor BANA had any right or authority to execute or record the WOLF NoTS 1, and its execution and recording furthered the depression of the Property's value.

94. On February 2, 2015, still without a valid substitution of trustee, still without a valid assignment of the beneficial interests in the DoT to BANA, and still without a valid DoT containing a power of sale, WOLF executed a Notice of Trustee's Sale ("WOLF NoTS 2"), and recorded it in the Los Angeles County Recorder's Office on February 5, 2015 as document number 2015-0129216.

95. Neither WOLF nor BANA had any right or authority to execute or record the WOLF NoTS 2, and its execution and recording continued to further depress the Property's value.

96. On November 11, 2015, still without a valid substitution of trustee, still without a valid assignment of the beneficial interests in the DoT to BANA or the REMIC, and still without a valid DoT containing a power of sale, WOLF executed a Notice of Trustee's Sale ("WOLF NoTS 3"), and recorded it in the Los

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

Angeles County Recorder's Office on November 4, 2015 as document number 2015-1348656.

97. Neither WOLF nor BANA nor the REMIC had any right or authority to execute or record the WOLF NoTS 3, and its execution and recording continued to further depress the Property's value. As notices of trustee's sales are valid for one year, Plaintiff is informed and believes and thereupon alleges that WOLF's execution and recording of the WOLF NoTS 3 was for the sole purpose of harassing Plaintiff and causing him undue hardship.

98. On February 26, 2017, still without a valid substitution of trustee, still without a valid assignment of the beneficial interests in the DoT to BANA or the REMIC, and still without a valid DoT containing a power of sale, WOLF executed a Notice of Trustee's Sale ("WOLF NoTS 4"), and recorded it in the Los Angeles County Recorder's Office on March 6, 2017 as document number 2017-0255841.

99. Neither WOLF nor BANA nor the REMIC had any right or authority to execute or record the WOLF NoTS 4, and its execution and recording continued to further depress the Property's value.

100. Plaintiff is informed and believes and thereupon alleges that the continued filing of foreclosure documents by WOLF, BANA, and the REMIC was part of a coordinated strategy to keep the Property's value depressed due to the "distressed" status in order to keep Plaintiff from being able to modify the Mortgage or sell the Property.

**<u>No Privileges or Protections for Any Trustee or Its Principle Herein</u>**

101. Plaintiff alleges that each and every recording alleged herein above was done by the recording party without any reasonable grounds to believe that the recording party, or the party for which they acted on behalf, had the authority to file the documents recorded as above-alleged, and therefore executed and recorded the them, and each of them, with reckless disregard for Plaintiff' rights or for the economic damage that each of them would cause to Plaintiff' Property. Plaintiff

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

therefore alleges that the execution and recording of each of the above-described recorded documents do not qualify as privileged publications under California Civil Code sections 47 and 2924.

102. Additionally, since California Business and Professions Code section 10234 became effective in 1998, each and every one of the recording parties and the parties they were recording on behalf of were aware of the law and the facts that rendered the DoT void and unenforceable.

103. Yet, with that knowledge and notice, the each of the above-described recorded documents was executed and recorded without any authority to do so under the void DoT. Therefore, any presumption normally granted by law by the filing of the foreclosure documents under Civil Code section 2924 et. seq. is thereby negated. Further, Plaintiff affirmatively refutes the raising of the 2924 presumption, and objects to any of the above-described recorded documents being utilized as evidence of such presumption.

104. Plaintiff further refutes either RECONTRUST's or WOLF's assertion of the presumption and protections of a foreclosure trustee under California law. RECONTRUST filed four notices of trustee's sale, each without first satisfying the contractual condition precedent in the DoT, all without filing the mandatory prerequisite notice of default, and all without a valid DoT granting RECONTRUST a valid power of sale. WOLF filed a notice of default and four notices of trustee's sale without a valid substitution of trustee granting WOLF the authority to act under the DoT, and all of WOLF's recorded documents were executed and recorded without a valid assignment transferring the beneficial interests of the DoT to BANA or the REMIC, nor a valid DoT containing a valid power of sale clause. Therefore, RECONTRUST is not protected by the presumptions and protections normally afforded foreclosure trustees. Further, WOLF was acting as a complete stranger to the DoT, and is not protected by the presumptions and protections normally afforded foreclosure trustees.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**The Dual Tracking**

105. At all times during the modification process, SELENE never stopped the foreclosure process.

106. SELENE never rescinded the NoD, and always kept a pending foreclosure threatened against Plaintiff as recourse for not complying with the terms of the TMA.

107. At all times during the modification process, should Plaintiff ever were to fail to comply with the terms of the TMA, SELENE remained in a position where SELENE could perform a nonjudicial trustee's sale immediately without notice.

108. These circumstances made Plaintiff feel like he had a gun to his head, that he had no other choice but to take a deal he did not understand or lose his home. Plaintiff alleges that because of this economic coercion and duress that he was denied a meaningful opportunity to acquire a loss mitigation program that is granted to him by California's Homeowner Bill of Rights.

**Tender**

109. Within the entirety of this complaint, and as to all causes of action and factual allegations therein, Plaintiff is alleging that the Defendants herein, and each of them, never had any actual authority or right to execute or record the Assignments, the notice of default, or the eight notices of trustee's sale against the Property, nor to negotiate the Mortgage under color of foreclosure mitigation, due to a void DoT. As such, where Plaintiff is challenging the authority to foreclose based off of allegedly void documents, Plaintiff is not required to tender.

**CAUSE OF ACTION ONE**
**Violation of the Fair Debt Collection Practices Act**
**(15 U.S.C. 1692 et. seq.)**
**Against BANA, RECONTRUST, WOLF, the REMIC and SELENE**

110. Plaintiff incorporates herein by this reference all prior allegations made herein above.

111. Congress passed the Fair Debt Collection Practices Act ("FDCPA") in 1977 wherein 15 U.S.C. § 1692e stated purpose of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abuse debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses." In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

112. The Note, which is included in the Mortgage, is a debt under the Fair Debt Collections Practices Act.

113. RECONTRUST is a debt collector under 15 U.S.C. § 1693a as it uses instrumentalities of interstate commerce or mails in any business the principle purpose of which is the collection of a debt and regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due to others, including COUNTRYWIDE, then BAC, then BANA.

114. WOLF is a debt collector under 15 U.S.C. § 1693a as it uses instrumentalities of interstate commerce or mails in any business the principle purpose of which is the collection of a debt and regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due to others, including BANA and the REMIC.

115. Neither RECONTRUST nor WOLF is exempted from the FDCPA by its purported position as foreclosure trustee, because each of them acted without any authority to do so, and therefore are not subject to any such protections normally provided to foreclosure trustee's under California law.

116. SELENE is a debt collector under 15 U.S.C. § 1693a as it uses instrumentalities of interstate commerce or mails in any business the principle purpose of which is the collection of a debt and regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due to others, including REMIC.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

117. REMIC is the principle to SELENE, both of which stand joined in a agency relationship, and as such, REMIC is vicariously liable for the acts that SELENE took on REMIC's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

118. From June 2008 through June 2011, COUNTRYWIDE was the principle to RECONTRUST, both of which stand joined in an agency relationship, and as such, COUNTRYWIDE is vicariously liable for the acts that RECONTRUST took on COUNTRYWIDE's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

119. From June 2011 through December 2013, BAC was the principle to RECONTRUST, both of which stand joined in an agency relationship, and as such, BAC is vicariously liable for the acts that RECONTRUST took on BAC's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

120. From January 2014 through May 2014, BANA was the principle to RECONTRUST, both of which stand joined in an agency relationship, and as such, BANA is vicariously liable for the acts that RECONTRUST took on BANA's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

121. From May 2014 through September 2015, BANA was the principle to WOLF, both of which stand joined in an agency relationship, and as such, BANA is vicariously liable for the acts that WOLF took on BANA's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

122. From May 2014 through September 2015, REMIC was the principle to WOLF, both of which stand joined in an agency relationship, and as such, REMIC is vicariously liable for the acts that WOLF took on REMIC's behalf,

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

while acting in the scope of that agency, which was the collection of the debt described in the Note.

123. Also from May 2014 through September 2015, SELENE was the principle to WOLF, both of which stand joined in an agency relationship, and as such, SELENE is vicariously liable for the acts that WOLF took on SELENE's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

124. Neither, RECONTRUST, WOLF, or SELENE are the owner or creditor of the Note, nor do they have any ownership interest in the Property.

125. SELENE, at the direction of and on behalf of REMIC did violate two provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so, (v) violating the California Homeowner Bill of Right's mandate that Plaintiff get a meaningful opportunity to an available loan modification by utilizing high pressure coercive tactics to induce Plaintiff to execute the Permanent Modification that was filled with waivers and statements against Plaintiff' interests buried beneath pages of legal jargin while not affording Plaintiff an opportunity to get the advice of legal counsel; and (vi) violating the California Homeowner Bill of Rights, by failing to put a single point of contact that was authorized to grant Plaintiff an extension of time to get legal counsel.

126. WOLF, at the direction of and on behalf of REMIC and SELENE did violate two provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f,

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of two notices of trustee's sale against the title of the Property when they had no authority to do so.

127. WOLF, at the direction of and on behalf of BANA did violate two provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD and two notices of trustee's sale against the title of the Property when they had no authority to do so.

128. RECONTRUST, at the direction of and on behalf of COUNTRYWIDE, and later BAC, did violate two provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of four notices of trustee's sale against the title of the Property when they had no authority to do so.

129. Plaintiff has repeatedly disputed each defendant's claims that the Property is secured, yet RECONTRUST, WOLF, and SELENE, and each of them, at the direction of and on behalf of COUNTRYWIDE, BAC, BANA and the REMIC, continued their unauthorized, unfair, and unconscionable conduct against Plaintiff.

130. RECONTRUST, WOLF, and SELENE, and each of them, at the direction of and on behalf of COUNTRYWIDE, BAC, BANA and the REMIC, unlawfully, unfairly, and unconscionably put the screws to Plaintiff, and as a direct and proximate result of RECONTRUST's, WOLF's, and SELENE's, and each of their, acts at the direction of and on behalf of COUNTRYWIDE, BAC, BANA and the REMIC, Plaintiff has sustained economic damage, including without limitation, the devaluation of the Property due to the filing of the NoD, eight notices of trustee sales, the clouds put on the Property's title, and the horrible modification process, in an amount to be proven at trial.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

## CAUSE OF ACTION TWO
## Violation of the Truth In Lending Act
## (15 U.S.C. § 1641)
## Against BANA and the REMIC

131. Plaintiff incorporates herein by this reference all prior allegations made herein above.

132. 15 U.S.C. § 1641, subd. (g) requires the recipient of a residential mortgage by assignment to notify the borrower in writing within thirty (30) days of when the loan was transferred.

133. BAC, BANA, and the REMIC have each asserted to Plaintiff, that they at one time or another as described herein was the recipient of the Mortgage by assignment.

134. Yet, Plaintiff has never received any written notification from either BAC, BANA, or the REMIC that the Mortgage was transferred to any of them as required under 15 U.S.C. § 1641(g), and therefore Plaintiff is informed and

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

believes and thereupon alleges that BAC, BANA, and the REMIC, and each of them, failed to notify Plaintiff that the Mortgage was transferred to them by assignment with thirty days of that transfer.

135. During all times mentioned within this cause of action, Plaintiff has maintained the Property address as Plaintiff' mailing address, and has kept the Property as Plaintiff' primary residence. There has not been any time during the times mentioned within this cause of action, where Plaintiff maintained any other mailing address for purposes of notice regarding the Mortgage.

136. The Mortgage is a mortgage on a residential property within the scope of the Truth In Lending Act.

137. As a direct and proximate result of BAC's, BANA's, and the REMIC's failure to notify Plaintiff of the assignment, Plaintiff has suffered actual damages, including without limitation, the cost to hire of an attorney to find out the ownership status of the Mortgage, delinquency, and negative credit reporting in an amount to be proven at trial.

138. BAC, BANA, and the REMIC, and each of them, took specific action, including the non-disclosure described herein, to conceal the trust owner of the Mortgage, and therefore the applicable statute of limitations for this claim is tolled by BAC, BANA, and the REMIC, and each of their, fraudulent and subversive conduct in keeping Plaintiff in the dark about their ownership of the Mortgage.

139. Additionally, and as a separate measure of damages, BAC, BANA, and the REMIC, and each of them, is liable for statutory damages equal to no less than $400.00 and not greater than $4,000.00 per violation.

140. Plaintiff has incurred reasonable attorney's fees and costs in prosecuting this claim, and is entitled to an award of attorney's fees and cost therefrom.

///

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**CAUSE OF ACTION THREE**
**Violation of the California Rosenthal Act**
**(Cal. Civ. Code § 1788.1)**
**Against BANA, WOLF, RECONTRUST, SELENE and the REMIC**

141. Plaintiff incorporates herein by this reference all prior allegations made herein above.

142. The California Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts. Section 1788.17 of the Rosenthal Act also includes violations of the FDCPA in a separate violation of state law.

143. COUNTRYWIDE, BAC, BANA, RECONTRUST, WOLF, SELENE, and the REMIC, and each of them, are "debt collectors" as defined by the Rosenthal Act because they both regularly, in the ordinary course of its business, on behalf of themselves or others, including each other, engages in debt collection.

144. The Note herein is a debt as defined by the Rosenthal Act because the Note is money, property or their equivalent which is due and owing or alleged to be due or owing to COUNTRYWIDE, then BAC, then BANA, now the REMIC, and RECONTRUST, WOLF, and SELENE, on behalf of and at COUNTRYWIDE, then BAC, then BANA, now the REMIC's direction.

145. RECONTRUST, WOLF, and SELENE, on behalf of and at COUNTRYWIDE, then BAC, then BANA, now the REMIC did violate Rosenthal Act, in that (1) they used false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) they used unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so, (v) violating the California Homeowner Bill of Right's mandate that Plaintiff get a meaningful opportunity to an available loan modification by utilizing high pressure coercive tactics to induce Plaintiff to execute the Permanent Modification that was filled with waivers and statements against Plaintiff' interests buried beneath pages of legal jargon while not affording Plaintiff an opportunity to get the advice of legal counsel; and (vi) violating the California Homeowner Bill of Rights, by failing to put a single point of contact that was authorized to grant Plaintiff an extension of time to get legal counsel.

146. Plaintiff has repeatedly disputed each defendant's claims that the Property is secured, yet RECONTRUST, WOLF, and SELENE, and each of them, at the direction of and on behalf of COUNTRYWIDE, BAC, BANA and the REMIC, continued their unauthorized, unfair, and unconscionable conduct against Plaintiff.

147. RECONTRUST, WOLF, and SELENE, and each of them, at the direction of and on behalf of COUNTRYWIDE, BAC, BANA and the REMIC, unlawfully, unfairly, and unconscionably put the screws to Plaintiff, and as a direct and proximate result of RECONTRUST's, WOLF's, and SELENE's, and each of their, acts at the direction of and on behalf of COUNTRYWIDE, BAC, BANA and the REMIC, Plaintiff has sustained economic damage, including without limitation, the devaluation of the Property due to the filing of the NoD, eight notices of trustee sales, the clouds put on the Property's title, and the horrible modification process, in an amount to be proven at trial.

///

///

///

///

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**CAUSE OF ACTION FOUR**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 et. seq.)**
**Against BANA, MERS, RECONTRUST, WOLF, SELENE, and the REMIC**

148. Plaintiff incorporates herein by this reference all prior allegations made herein above.

149. California's Unfair Competition Law ("UCL") may be brought by a person who has suffered injury in fact and has lost money or property as a result of unfair competition, which is defined as any "unlawful, unfair or fraudulent business act or practice" by California Business and Professions Code 17200.

**<u>Unlawful Acts by COUNTRYWIDE For Which BANA Is Liable As Successor In Interest</u>**

150. COUNTRYWIDE violated California Business and Professions Code section 10234 by illegally encumbering residential real estate (the Property) with a table-funded mortgage after January 1, 1998.

151. COUNTRYWIDE caused a void instrument, the DoT herein, with full knowledge of its illegal character, to be recorded in the County Recorder's Office for Los Angeles County in violation of California Penal Code sections 115.5 and 532.

152. By recording the illegal and void DoT, COUNTRYWIDE also slandered the title to Plaintiff' Property.

153. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, COUNTRYWIDE has violated the above described California laws and those violations are therefore per se violations of the UCL.

154. Plaintiff alleges the COUNTRYWIDE's misconduct, as alleged herein, gave, and have given, COUNTRYWIDE an unfair competitive advantage over their competitors, and the scheme implemented by COUNTRYWIDE as described herein is and was the result of unfair business practices designed to enrich COUNTRYWIDE to the illegal detriment of Plaintiff.

155. As a direct and proximate cause of COUNTRYWIDE's illegal encumbering the Property with a table-funded mortgage, Plaintiff has been economically damages including without limitation the devaluation of Plaintiff' Property by the void and illegal encumbrance the DoT creates on the title to the Property, the inhibition the encumbrance has caused Plaintiff in acquiring other lending secured by the Property, in an amount to be proven at trial.

156. By reason of the foregoing, BANA, as successor in interest to COUNTRYWIDE, has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

157. The harm COUNTRYWIDE has brought upon Plaintiff was done in the regular course of business for COUNTRYWIDE, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to COUNTRYWIDE's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by BANA of enforcing illegally encumbered table-funding residential mortgages threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

158. COUNTRYWIDE's and now BANA's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void encumbrances on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

159. Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Acts by MERS For Which MERS Is Independently Liable, and For Which BANA Is Liable As Successor In Interest to COUNTYRWIDE and BAC**

160. MERS violated the DoT by executing and attempting to assign the DoT to BAC in its own capacity after MERS lost its capacity as nominee. The DoT states very clearly, three times, that MERS can only act on behalf of and at the direction of the Lender, and only in a "nominee" capacity.

161. At the time of the Assignment 1, COUNTRYWIDE had been gone for three years, which destroyed MERS's authority to act on behalf of COUNTRYWIDE because the principle to the agency relationship had in effect died or became corporately incapacitated. MERS therefore did not have the authority or power to assign the DoT to BAC, or to execute it in MERS's own individual capacity, and the Assignment 1 was a breach of that contact.

162. MERS caused a void instrument, the Assignment 1 herein, with full knowledge of its illegal character, to be recorded in the County Recorder's Office for Los Angeles County in violation of California Penal Code sections 115.5 and 532.

163. By recording the illegal and void Assignment 1, MERS also slandered and clouded the title to Plaintiff' Property.

164. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, MERS has violated the above described California laws and recorded contracts, and those violations are therefore per se violations of the UCL.

165. Plaintiff alleges the MERS's misconduct, as alleged herein, gave, and have given, MERS an unfair competitive advantage over their competitors, and the

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

scheme implemented by MERS as described herein is and was the result of unfair business practices designed to enrich MERS to the illegal detriment of Plaintiff.

166. As a direct and proximate cause of MERS's illegal executing and attempting to assign the DoT to BAC in its own capacity after MERS lost its capacity as nominee, Plaintiff has been economically damages including without limitation the devaluation of Plaintiff' Property by the void and illegal assignment of the DoT creating a cloud on the title to the Property, the inhibition the cloud has caused Plaintiff in acquiring other lending secured by the Property, in an amount to be proven at trial.

167. By reason of the foregoing, BANA, as successor in interest to MERS, has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

168. The harm MERS has brought upon Plaintiff was done in the regular course of business for MERS, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to MERS's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by BANA of enforcing illegally assigned residential mortgages threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

169. MERS's and now BANA's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void encumbrances on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

170. Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Acts by BAC For Which BANA Is Liable As Successor In Interest**

171. BAC violated the DoT and California foreclosure laws by causing RECONTRUST to execute and record four notices of trustee's sale against the Property's title without (1) satisfying the condition precedent to the exercise of the power of sale in the DoT; (2) recording the mandatorily prerequisite notice of default; and (3) having a valid DoT with a valid power of sale clause, in its attempts to foreclose on Plaintiff's Property.

172. BAC caused four void instruments, the four Recontrust NoTSs herein, with full knowledge of their illegal character, and caused them to be recorded in the County Recorder's Office for Los Angeles County in violation of California Penal Code sections 115.5 and 532.

173. By recording the four illegal and void notices of trustee's sale, BAC also slandered and clouded the title to Plaintiff' Property.

174. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, BAC has violated the above described California laws and recorded contracts, and those violations are therefore per se violations of the UCL.

175. Plaintiff alleges the BAC's misconduct, as alleged herein, gave, and have given, BAC an unfair competitive advantage over their competitors, and the scheme implemented by BAC as described herein is and was the result of unfair business practices designed to enrich BAC to the illegal detriment of Plaintiff.

176. As a direct and proximate cause of BAC's recording of illegal notices of trustee's sale, Plaintiff has been economically damages including without

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

limitation the devaluation of Plaintiff' Property by the void and illegal notices of trustee's sale creates on the title to the Property, the inhibition the notices of trustee's sale have caused Plaintiff in acquiring other lending secured by the Property, in an amount to be proven at trial.

177. By reason of the foregoing, BANA, as successor in interest to BAC, has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

178. The harm BAC has brought upon Plaintiff was done in the regular course of business for BAC, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to BAC's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by BANA of perpetuating the maintenance and recording of illegal notices of trustee's sale on people's homes threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

179. BAC's and now BANA's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void and illegal notices of trustee's sales on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

180. Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**Unlawful Acts by RECONTRUST For Which BANA Is Liable As Successor In Interest to BAC, and As Principle to RECONTRUST**

181. RECONTRUST violated the DoT and California foreclosure laws by executing and recording four notices of trustee's sale against the Property's title without (1) satisfying the condition precedent to the exercise of the power of sale in the DoT; (2) recording the mandatorily prerequisite notice of default; and (3) having a valid DoT with a valid power of sale clause, in its attempts to foreclose on Plaintiff's Property.

182. RECONTRUST caused four void instruments, the four Recontrust NoTSs herein, with full knowledge of their illegal character, and caused them to be recorded in the County Recorder's Office for Los Angeles County in violation of California Penal Code sections 115.5 and 532.

183. By recording the four illegal and void notices of trustee's sale, RECONTRUST also slandered and clouded the title to Plaintiff' Property.

184. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, RECONTRUST has violated the above described California laws and recorded contracts, and those violations are therefore per se violations of the UCL.

185. Plaintiff alleges the RECONTRUST's misconduct, as alleged herein, gave, and have given, RECONTRUST an unfair competitive advantage over their competitors, and the scheme implemented by RECONTRUST as described herein is and was the result of unfair business practices designed to enrich RECONTRUST to the illegal detriment of Plaintiff.

186. As a direct and proximate cause of RECONTRUST's recording of illegal notices of trustee's sale, Plaintiff has been economically damages including without limitation the devaluation of Plaintiff' Property by the void and illegal notices of trustee's sale creates on the title to the Property, the inhibition the notices

of trustee's sale have caused Plaintiff in acquiring other lending secured by the Property, in an amount to be proven at trial.

187. By reason of the foregoing, BANA, as successor in interest to BAC and principle to RECONTRUST, has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

188. The harm RECONTRUST has brought upon Plaintiff was done in the regular course of business for RECONTRUST, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to RECONTRUST's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by BANA of perpetuating the maintenance and recording of illegal notices of trustee's sale on people's homes threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

189. RECONTRUST's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void and illegal notices of trustee's sales on borrower's properties, on behalf of BANA, presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire. Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Acts by WOLF For Which BANA Is Liable As Principle**

190. WOLF violated the DoT and California foreclosure laws by executing and recording the NoD and four notices of trustee's sale against the Property's title

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

without (1) a validly executed or recorded substitution of trustee replacing RECONTRUST with WOLF; or (2) having a valid DoT with a valid power of sale clause, in its attempts to foreclose on Plaintiff's Property.

191. WOLF caused five void instruments, the NoD and the four WOLF NoTSs herein, with full knowledge of their illegal character, and caused them to be recorded in the County Recorder's Office for Los Angeles County in violation of California Penal Code sections 115.5 and 532.

192. By recording the five illegal and void notices of trustee's sale, WOLF also slandered and clouded the title to Plaintiff' Property.

193. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, WOLF has violated the above described California laws and recorded contracts, and those violations are therefore per se violations of the UCL.

194. Plaintiff alleges the WOLF's misconduct, as alleged herein, gave, and have given, WOLF an unfair competitive advantage over their competitors, and the scheme implemented by WOLF as described herein is and was the result of unfair business practices designed to enrich WOLF to the illegal detriment of Plaintiff.

195. As a direct and proximate cause of WOLF's recording of illegal notices of default and trustee's sale, Plaintiff has been economically damages including without limitation the devaluation of Plaintiff' Property by the void and illegal notices of trustee's sale creates on the title to the Property, the inhibition the notices of trustee's sale have caused Plaintiff in acquiring other lending secured by the Property, in an amount to be proven at trial.

196. By reason of the foregoing, BANA, as principle to WOLF, has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

197. The harm WOLF has brought upon Plaintiff was done in the regular course of business for WOLF, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to WOLF's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by BANA of perpetuating the maintenance and recording of illegal notices of default and trustee's sale on people's homes threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

198. WOLF's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void and illegal notices of trustee's sales on borrower's properties, on behalf of BANA, presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire. Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Acts of BANA**

199. BANA violated the DoT and California foreclosure laws by causing WOLF to execute and record the NoD and four notices of trustee's sale against the Property's title without (1) a validly executed or recorded substitution of trustee replacing RECONTRUST with WOLF; (2) executing and recording a valid assignment transferring the DoT from COUNTRYWIDE or BAC to BANA; OR (3) having a valid DoT with a valid power of sale clause, in its attempts to foreclose on Plaintiff's Property.

200. BANA caused five void instruments, the NoD and the four WOLF NoTSs herein, with full knowledge of their illegal character, and caused them to

be recorded in the County Recorder's Office for Los Angeles County in violation of California Penal Code sections 115.5 and 532.

201. By recording the five illegal and void notices of trustee's sale, BANA also slandered and clouded the title to Plaintiff' Property.

202. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, BANA has violated the above described California laws and recorded contracts, and those violations are therefore per se violations of the UCL.

203. Plaintiff alleges the BANA's misconduct, as alleged herein, gave, and have given, BAC an unfair competitive advantage over their competitors, and the scheme implemented by BANA as described herein is and was the result of unfair business practices designed to enrich BAC to the illegal detriment of Plaintiff.

204. As a direct and proximate cause of BANA's recording of illegal notices of default and trustee's sale, Plaintiff has been economically damages including without limitation the devaluation of Plaintiff' Property by the void and illegal notices of trustee's sale creates on the title to the Property, the inhibition the notices of trustee's sale have caused Plaintiff in acquiring other lending secured by the Property, in an amount to be proven at trial.

205. By reason of the foregoing, BANA has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

206. The harm BANA has brought upon Plaintiff was done in the regular course of business for BANA, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to BANA's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by BANA of perpetuating the

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

maintenance and recording of illegal notices of default and trustee's sale on people's homes threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

207. BANA's unfair, unlawful, and fraudulent business practices of recording illegal deeds of trust, and placing void and illegal notices of trustee's sales on borrower's properties presents a continuing threat to members of the public in that other consumers will be defrauded into believing their loans are secured when they are not, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**<u>Unlawful Practices by SELENE</u>**

208. SELENE violated California Civil Code section 2923.6 by failing to give Plaintiff a meaningful opportunity to acquire an available loan modification after January 1, 2013, in that SELENE used coercive high-pressure tactics to induce Plaintiff to either enter into an unconscionable and adhesive TMA or give up Plaintiff's attempts to modify the Mortgage. SELENE did this with a TMA loaded with waivers and statements against Plaintiff's interest, degrading and coercive language, and a modified payment $1,000 greater than Plaintiff's current payment, and only after a $20,000 initial down payment. SELENE additionally was encouraging Plaintiff to allow them to help him refinance the Mortgage, while simultaneously and continuously negatively reporting on his credit to ensure he never would receive a refinance.

209. SELENE violated the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) by attempting to collect a debt on behalf of REMIC, all while knowing or having no reasonable grounds for believing that REMIC was not the

owner of the debt. The debt was purportedly transferred to REMIC after the official closing date of the REMIC, which is a prohibited transaction under Internal Revenue Code section 860F (26 U.S.C. §860F) and its corresponding Treasury Regulations, and by law void. SELENE was aware of the Internal Revenue Code describing such a transfer as a prohibited transaction, and therefore had no reason to believe that REMIC was the owner of the debt that SELENE attempted to collect upon on behalf of and at the direction of REMIC. By proceeding in spite of this knowledge or lack of reasonable belief, SELENE attempted to collect a debt under false and fraudulent pretenses to the detriment of Plaintiff, and in direct violation of the Federal Debt Collection Practices Act.

210. SELENE violated the California Rosenthal Act (Cal. Civ. Code § 1877.1) by attempting to collect a debt on behalf of REMIC, all while knowing or having no reasonable grounds for believing that REMIC was not the owner of the debt. The debt was purportedly transferred to REMIC after the official closing date of the REMIC, which is a prohibited transaction under Internal Revenue Code section 860F (26 U.S.C. §860F) and its corresponding Treasury Regulations, and by law void. SELENE was aware of the Internal Revenue Code describing such a transfer as a prohibited transaction, and therefore had no reason to believe that REMIC was the owner of the debt that SELENE attempted to collect upon on behalf of and at the direction of REMIC. By proceeding in spite of this knowledge or lack of reasonable belief, SELENE attempted to collect a debt under false and fraudulent pretenses to the detriment of Plaintiff, and in direct violation of the Federal Debt Collection Practices Act.

211. SELENE violated California Penal Code sections 518, 519, and 520 by extorting and/or exerting illegal economic coercion against, in that SELENE used coercive high-pressure tactics to either induce Plaintiff into the TMA loaded with waivers and statements against Plaintiff's interest degrading and coercive language, and a modified payment $1,000 greater than Plaintiff's current payment,

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

and only after a $20,000 initial down payment, or induce Plaintiff to give up his efforts to modify the Mortgage. SELENE additionally was encouraging Plaintiff to allow them to help him refinance the Mortgage, while simultaneously and continuously negatively reporting on his credit to ensure he never would receive a refinance. As SELENE did not have authorization (due to a void DoT and REMIC's failed transfer), SELENE's attempt to collect a debt was illegal (violating the Fair Debt Collection Practices Act and the California Rosenthal Act), and therefore the coercion placed upon Plaintiff by SELENE was illegal pressure and duress to the level of extortion and/or economic coercion.

212. SELENE violated California Civil Code sections 1569 and 1570 by placing duress and exerting menace against Plaintiff, in that SELENE used coercive high-pressure tactics to either induce Plaintiff into the TMA loaded with waivers and statements against Plaintiff's interest degrading and coercive language, and a modified payment $1,000 greater than Plaintiff's current payment, and only after a $20,000 initial down payment, or induce Plaintiff to give up his efforts to modify the Mortgage. SELENE additionally was encouraging Plaintiff to allow them to help him refinance the Mortgage, while simultaneously and continuously negatively reporting on his credit to ensure he never would receive a refinance. All the while, SELENE was threatening to foreclose of the Property, when in fact they did not have the authority due to the void DoT and the failed assignment to REMIC as plead herein. Plaintiff did not know at the time that the DoT was void, nor that SELENE lacked the authority to foreclose, and SELENE preyed upon Plaintiff's ignorance to place great coercive and illegal pressure against Plaintiff to induce Plaintiff to enter into the TMA against Plaintiff's will or give up all together.

213. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, SELENE has violated the above described federal and state laws and those violations are therefore per se violations of the UCL.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

214. Plaintiff alleges the SELENE's misconduct, as alleged herein, gave, and have given, SELENE an unfair competitive advantage over their competitors, and the scheme implemented by SELENE as described herein is and was the result of unfair business practices designed to enrich SELENE to the illegal detriment of Plaintiff.

215. As a direct and proximate cause of SELENE's illegal acts, Plaintiff has been economically damages in an amount to be proven at trial.

216. By reason of the foregoing, SELENE has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiff, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code sections 17203 and 17204.

217. The harm SELENE has brought upon Plaintiff was done in the regular course of business for SELENE, and has been suffered by thousands of California Homeowners. The harm to Plaintiff, and other of the public, outweighs the utility to SELENE's policy and practice, because these policies and practices constitute unlawful business practices or acts within the meaning of Business and Professions Code section 17200. Further, the ongoing practice by SELENE of either inducing homeowners into TMAs loaded with waivers and statements against their interest degrading and coercive language, and a modified payment $1,000 greater than their current payment, and only after a $20,000 initial down payment, or induce homeowners to give up their efforts to modify the Mortgage entirely, threatens an incipient violation of consumer laws, or violates the policy and spirit of such laws, significantly threatening competition in the residential lending industry in the state.

218. SELENE's unfair, unlawful, and fraudulent business practices, as described above, presents a continuing threat to members of the public in that other consumers will be defrauded as Plaintiff has been, which will have a chilling effect on the borrower ability to acquire future and further secured lending against their property as they so desire.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

219. Plaintiff has no other adequate remedy of law, and is therefore entitled to injunctive relief and attorney's fees as available under the law.

**Unlawful Acts of REMIC**

220. Plaintiff hereby incorporates fully by this reference paragraphs 99 through 122 herein to this section of this cause of action.

221. REMIC is allegedly the successor in interest to the Mortgage, and although disputed by Plaintiff for the reasons stated herein above in this cause of action, and as pleading in the alternative, if REMIC is determined to the be successor in interest to the Mortgage, then REMIC assumes all responsibility as a successor in interest for its predecessors in interest, COUNTRYWIDE, BAC, and BANA, who violated California law multiple times as herein above described.

222. REMIC is the principle to SELENE, both of which stand joined in an agency relationship, and as such, REMIC is vicariously liable for the acts of its agent, SELENE, for the acts that SELENE took on REMIC's behalf, while acting in the scope of that agency, which was the collection of the debt described in the Note.

223. As a proximate cause of REMIC's directing SELENE's illegal actions against Plaintiff, and as a proximate cause of COUNTRYWIDE's, BAC's, and BANA's illegal actions against Plaintiff, for which REMIC is alternatively alleged to be responsible for a purported successor in interest to the Mortgage, Plaintiff has been economically injured, including without limitation, the devaluation of Plaintiff' Property by the illegal acts described herein above, in an amount to be proven at trial.

**CAUSE OF ACTION FIVE**
**Cancelation Of Instrument**
**(Statutory Citation)**
**Against BANA, RECONTRUST, WOLF, SELENE, and the REMIC**

224. Plaintiff hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**Cancelation of Deed of Trust**

225. There are in existence the following certain written instrument which purports to be a Deed of Trust, purportedly securing the herein described Note to the herein described Property:

a. The deed of trust, dated June 1, 2008, between Plaintiff and JANET as "Borrower," COUNTRYWIDE as "Lender," MERS as "Beneficiary," and RECONTRUST as "Trustee," which was recorded in the Los Angeles County Recorder's Office as document number 2008-1081339 on June 18, 2008.

226. The form and contents of the DoT is as set out in the copy of which are attached to this complaint as **Exhibit A** and incorporated fully herein by reference.

227. The DoT is a three-party contract of which Plaintiff is an expressed party, and as such has standing to challenge the DoT.

228. The DoT encumbers California residential property to a table-funded mortgage in violation of California Business and Professions Code section 10234 as described herein above. The DoT is therefore the singular subject of an illegal transaction, and was given as illegal consideration under California Civil Code sections 1596 and 1608. The DoT is therefore void.

229. The DoT creates serious injury to Plaintiffs' title in his Property as it has placed a cloud on title, and a substantial encumbrance on the value of their Property. These void DoT is proximately causing diminution in value to the Properties, as well as causing other damages in an amount and degree proven at trial.

230. Plaintiff seeks this Court's exercise of its equitable powers to confirm the DoT is void, cancelling the instrument as without any effect.

///

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

**Cancelation of the Assignments**

231. Plaintiff is an actual party to the three-party contract that is the DoT, and therefore has standing to enforce its provisions and subsequent transfers that violate the expressed wording or intention of the parties thereto.

232. The DoT contain provisions for the transfer of the DoT by the beneficiary. However, implied within the DoT transfer provisions is a covenant that the beneficiary will not transfer the DoT in violation of any federal or state law, or in violation of any existing contract. The parties to the DoT are bound by statutory and common law in California not to violate any laws and not to interfere with any pre-existing contractual relationships.

233. There are in existence certain written instruments which purport to be Assignments of Deed of Trust as follows:

a. The assignment, dated June 22, 2011, purporting to transfer the DoT from MERS to BAC, which was recorded on June 30, 2011 in the Los Angeles County Recorder as Document Number 2011-0887397.

b. The assignment, dated September 28, 2015, purporting to transfer the DoT from BANA to the REMIC, which was recorded on October 20, 2015 in the Los Angeles County Recorder as Document Number 2015-1288188.

234. The form and contents of the above-described assignments are as set out in the copy of it which is attached to this complaint as **Exhibit B** and incorporated by reference.

235. As described herein above, the assignments purport to transfer the void DoT in violation of California foreclosure and title laws and pre-existing DoT contract, in addition to being made without the authority to do so in the first place. Because of these violations, the assignments are void.

///

236. The Assignment creates serious injury to Plaintiff's title in his Property as they have placed a cloud on title, and an unauthorized stranger to the Mortgages in a place of creditor against Plaintiff. These void assignments are proximately causing diminution in value to the Property, as well as causing other damages in an amount and degree proven at trial.

237. Plaintiff seeks this Court's exercise of its equitable powers to confirm the above-described assignments are void, and cancelling the instruments as without any effect.

**Cancellation of Notice of Default**

238. There is in existence a certain written instrument which purports to be the NoD. The form and contents of the NoD are as set out in the copy of it which is attached to this complaint as **Exhibit C** and incorporated by reference.

239. On May 12, 2014, the NoD was recorded in the County Recorder's Office for Los Angeles County as Document No. 2014-0558435.

240. The NoD was executed by WOLF who is not the authorized trustee under the DoT, because the DoT is void as illegal, and the Assignment to BANA is also void, and there was no substitution of trustee filed replacing RECONTRUST with WOLF as trustee under the DoT. WOLF was at all times regarding the NoD acting under the principle agent relationship between WOLF and BANA, and then the REMIC. Neither BANA nor the REMIC had authority because the void DoT rendered the Note unsecured at the time of its recording, WOLF did not have the authority to execute and record the NoD, and the Mortgage never transferred to REMIC because the prohibited transaction stopped its transfer at its inception.

241. The NoD also contains a false statement that the trustee received a written declaration of default and demand for sale, when in fact the trustee never received such declaration and demand as required by California foreclosure laws.

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

242. Because of all of these substantial procedural and substantive defects in the NoD, it is void.

243. Plaintiff seeks this Court's exercise of its equitable powers to confirm the NoD is void, cancel the instrument as without any effect.

Cancellation of Notices of Trustee's Sale

244. There are in existence certain written instruments which purport to be Notices of Trustee's Sale as follows:

a. The notice of trustee's sale, dated November 17, 2011, executed by RECONTRUST, on behalf of and by the direction of BAC, and recorded in the Office of the County Recorder for Los Angeles County on November 23, 2011 as Document No. 2011-2593379. This notice of trustee's sale is void because of the following:

   i. Neither BAC, nor RECONTRUST, satisfied the mandatory condition precedent of a notice of intent to acceleration under the DoT;

   ii. RECONTRUST failed to file the mandatory prerequisite NoD prior to filing the NoTS;

   iii. The authorizing DoT was void.

b. The notice of trustee's sale, dated November 5, 2012, executed by RECONTRUST, on behalf of and by the direction of BAC, and recorded in the Office of the County Recorder for Los Angeles County on November 7, 2012 as Document No. 2012-1693607. This notice of trustee's sale is void because of the following:

   i. Neither BAC, nor RECONTRUST, satisfied the mandatory condition precedent of a notice of intent to acceleration under the DoT;

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

ii. RECONTRUST failed to file the mandatory prerequisite NoD prior to filing the NoTS;

iii. The authorizing DoT was void.

c. The notice of trustee's sale, dated May 3, 2013, executed by RECONTRUST, on behalf of and by the direction of BAC, and recorded in the Office of the County Recorder for Los Angeles County on May 7, 2013 as Document No. 2013-0681894. This notice of trustee's sale is void because of the following:

i. Neither BAC, nor RECONTRUST, satisfied the mandatory condition precedent of a notice of intent to acceleration under the DoT;

ii. RECONTRUST failed to file the mandatory prerequisite NoD prior to filing the NoTS;

iii. The authorizing DoT was void.

d. The notice of trustee's sale, dated August 1, 2013, executed by RECONTRUST, on behalf of and by the direction of BAC, and recorded in the Office of the County Recorder for Los Angeles County on August 5, 2013 as Document No. 2013-1143972. This notice of trustee's sale is void because of the following:

i. Neither BAC, nor RECONTRUST, satisfied the mandatory condition precedent of a notice of intent to acceleration under the DoT;

ii. RECONTRUST failed to file the mandatory prerequisite NoD prior to filing the NoTS;

iii. The authorizing DoT was void.

e. The notice of trustee's sale, dated September 2, 2014, executed by WOLF, on behalf of and by the direction of BANA, and recorded in the Office of the County Recorder for Los Angeles

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

County on September 3, 2014 as Document No. 2014-0921903. This notice of trustee's sale is void because of the following:

i. No substitution of trustee exists that transfers the trusteeship under the DoT from RECONTRUST to WOLF;

ii. The authorizing DoT was void.

f. The notice of trustee's sale, dated February 2, 2015, executed by WOLF, on behalf of and by the direction of BANA, and recorded in the Office of the County Recorder for Los Angeles County on February 5, 2015 as Document No. 2015-0129216. This notice of trustee's sale is void because of the following:

i. No substitution of trustee exists that transfers the trusteeship under the DoT from RECONTRUST to WOLF;

ii. The authorizing DoT was void.

g. The notice of trustee's sale, dated November 2, 2015, executed by WOLF, on behalf of and by the direction of the REMIC, and recorded in the Office of the County Recorder for Los Angeles County on November 4, 2015 as Document No. 2015-1348656. This notice of trustee's sale is void because of the following:

i. No substitution of trustee exists that transfers the trusteeship under the DoT from RECONTRUST to WOLF;

ii. The transfer to the REMIC was a prohibited transaction and in violation of the DoT;

iii. The authorizing DoT was void.

h. The notice of trustee's sale, dated February 26, 2017, executed by WOLF, on behalf of and by the direction of the REMIC, and

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

recorded in the Office of the County Recorder for Los Angeles County on March 6, 2017 as Document No. 2017-0255841. This notice of trustee's sale is void because of the following:

i. No substitution of trustee exists that transfers the trusteeship under the DoT from RECONTRUST to WOLF;

ii. The transfer to the REMIC was a prohibited transaction and in violation of the DoT;

iii. The authorizing DoT was void.

245. The form and contents of the NoTSs are as set out in the copy of it which are attached to this complaint as **Exhibit D** and incorporated by reference.

246. Because of all of these substantial procedural and substantive defects in the NoTSs, they are void.

247. Plaintiffs seek this Court's exercise of its equitable powers to confirm the NoTSs are void, cancel the instrument as without any effect.

**CAUSE OF ACTION SIX**
**NEGLIGENCE**
**Against SELENE and the REMIC**

248. Plaintiff hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

249. Penal Code section 530.5 placed a duty on SELENE to abstain from unlawfully utilizing Plaintiff' private personal information.

250. SELENE, breach that duty by utilizing Plaintiff' name, address, and mortgage account number in the unlawful and unauthorized execution and filing of the NoD. SELENE did not have the authority to execute and record the NoD, and therefore the publication is not privileged.

251. SELENE also breached their duty to exercise reasonable care in the review of Plaintiff' loan modification application once SELENE had agreed to

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

consider Plaintiff' application by (1) using false, deceptive, or misleading representations or means in connection with the collection of the Note; and (2) using unfair or unconscionable means to collect or attempt to collect a debt by (i) claiming that the mortgage is secured when it is not, (ii) claiming that the Property is subject to foreclosure when it is not, (iii) threatening to foreclose against the Property if payment is not made when they do not have a valid security interest in the Property to execute, (iv) filing of the NoD against the title of the Property when they had no authority to do so, (v) violating the California Homeowner Bill of Right's mandate that Plaintiff get a meaningful opportunity to an available loan modification by utilizing high pressure coercive tactics to induce Plaintiff to either enter into an unconscionable and adhesive TMA or give up Plaintiff's attempts to modify the Mortgage. SELENE did this with a TMA loaded with waivers and statements against Plaintiff's interest, degrading and coercive language, and a modified payment $1,000 greater than Plaintiff's current payment, and only after a $20,000 initial down payment; and (vi) SELENE additionally was encouraging Plaintiff to allow them to help him refinance the Mortgage, while simultaneously and continuously negatively reporting on his credit to ensure he never would receive a refinance.

252. As a direct and proximate cause of SELENE's acts, Plaintiff has sustained general and special damages, including without limitation devaluation of the Property, in an amount to be proven at trial.

**CAUSE OF ACTION SEVEN**
**SLANDER OF TITLE**
**Against BANA, WOLF, RECONTRUST, SELENE, and the REMIC**

253. Plaintiff hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

254. As described herein above, COUNTRYWIDE slandered the Property's title by illegally encumbering a table-funded loan to the Property with

the recording of the DoT in direct violation of California Business and Professions Code section 10234. The recording was therefore not subject to any privilege under Civil Code section 47.

255. MERS slandered the Property's title by recording the Assignment 1, when MERS had executed the assignment in its own individual capacity in violation of the DoT and California law, as well as without any authority because of COUNTRYWIDE's demise in its merger with BANA. The recording was therefore not subject to any privilege under Civil Code section 47.

256. BAC slandered the Property's title by authorizing and causing to be recorded four notices of trustee sale against the Property without first issuing a notice of intent to accelerate as required by the DoT, without first recording a notice of default as required by California foreclosure law, and without a valid power of sale due to the void DoT. The recording was therefore not subject to any privilege under Civil Code section 47.

257. RECONTRUST slandered the Property's title by recording four notices of trustee sale against the Property without first issuing a notice of intent to accelerate as required by the DoT, without first recording a notice of default as required by California foreclosure law, and without a valid power of sale due to the void DoT. The recording was therefore not subject to any privilege under Civil Code section 47.

258. BANA slandered the Property's title by failing to record and assignment from BAC to BANA, and then causing to be recorded a notice of default and two notices of trustee's sale against the Property without executing a substitution of trustee transferring the trusteeship under the DoT from RECONTRUST to WOLF, and without a valid power of sale due to the void DoT. The recording was therefore not subject to any privilege under Civil Code section 47.

///

259. SELENE slandered the Property's title by recording the Assignment 2 on the Property's title when BANA did not have any right to the DoT because there had not been any assignment from BAC to BANA, and because the transfer to the REMIC violated federal and state laws, and the DoT. SELENE further slandered the Property's title by causing to be recorded two notices of trustee's sale without any authority to do so, and without a valid power of sale clause due to the void DoT. The recording was therefore not subject to any privilege under Civil Code section 47.

260. WOLF slandered the Property's title by recording a notice of default and four notices of trustee's sale against the Property without executing a substitution of trustee transferring the trusteeship under the DoT from RECONTRUST to WOLF, and without a valid power of sale due to the void DoT. The recording was therefore not subject to any privilege under Civil Code section 47.

261. The DoT, the two assignments, the notice of default, and the eight notices of trustee's sale placed a large encumbrance, two clouds, and nine "distress" items on the title to the Property which disparages the title to the Property greatly.

262. Because of the malicious executions and recording of the DoT, the two assignments, the NoD, and the eight NoTSs, Plaintiff's Property has been disparaged greatly and devalued substantially because of the weight of all the illegal recordings against the Property's title. These damages were the direct and proximate result of the recording of the DoT, the two assignments, the NoD, and the eight NoTSs in an amount to be proven at trial.

263. Furthermore, the aforementioned recording was motivated by oppression, fraud, and malice on the part of all Defendants, except JANET, and each of them, in that they committed all these acts with full knowledge of or reckless disregard for the fact that they neither owned the rights to the Mortgage

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

or were authorized to record the statements. Therefore, the awarding of exemplary and punitive damages is justified.

**CAUSE OF ACTION EIGHT**
**QUIET TITLE**
**(Cal. Civil Code § 761.020)**
**Against All Defendants**

264. Plaintiff hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

265. The legal description for the Property is:

> LOT 81 OF TRACT NO. 19305, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 526 PAGES 12 TO 16 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. APN: 7512-020-028.

266. Plaintiff, and JANET, have fee simple absolute title to the Property, on the basis of the Grant Deed executed on March 7, 2008 (the "Deed"), which transfers fee simple absolute title to Plaintiff and JANET, and was recorded in the Los Angeles Recorder's Office on June 18, 2008 as document number 2008-1081338. A true and correct copy of the Deed is attached hereto as **Exhibit E**, and incorporated fully herein by this reference.

267. JANET is a co-owner of the Property, who is included in this single cause of action, solely because of her presence as a co-title holder to the Property, as required by California law.

268. Plaintiff alleges that COUNTRYWIDE placed an adverse claim to Plaintiff' title to the Property by recording the illegal and void DoT, which purports to encumber Plaintiff' title to the Property and thereby diminishing the Property's value. The DoT is an illegal contract made and recorded by COUNTRYWIDE in violation of California Business and Professions Code section 10234, however its

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

presence on the title to the Property remains an adverse claim against Plaintiff' Property.

269. Plaintiff alleges that MERS placed an adverse claim to Plaintiff' title to the Property by recording the illegal and void Assignment 1, which purports to transfer the illegal encumbrance of the DoT from COUNTRYWIDE to BAC and thereby diminishing the Property's value. The Assignment 1 is an illegal contract made and recorded by MERS in violation of California title and agency laws, and the DoT, however its presence on the title to the Property remains an adverse claim against Plaintiff' Property.

270. Plaintiff alleges that RECONTRUST, at the direction and on behalf of BAC, placed an adverse claim to Plaintiff' title to the Property by recording the four notices of trustee's sale, which purports to set a date to foreclose on the Property and "distresses" the value of the Property. The four Recontrust NoTSs are illegal contract made and recorded by RECONTRUST, at the direction and on behalf of BAC, in violation of California foreclosure laws and the DoT, however their presence on the title to the Property remains an adverse claim against Plaintiff' Property.

271. Plaintiff alleges that WOLF, at the direction and on behalf of BANA, and later SELENE and the REMIC, placed an adverse claim to Plaintiff' title to the Property by recording the NoD and four notices of trustee's sale, which purports to set a date to foreclose on the Property and "distresses" the value of the Property. The NoD and the four WOLF NoTSs are illegal contracts made and recorded by WOLF, at the direction and on behalf of BANA, and later SELENE and the REMIC, in violation of California foreclosure laws and the DoT, however their presence on the title to the Property remains an adverse claim against Plaintiff' Property.

272. Plaintiff alleges that SELENE, at the direction and on behalf of BANA, placed an adverse claim to Plaintiff' title to the Property by recording the

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

Assignment 2, which purports to transfer the void DoT from BANA to the REMIC, which continues and prolongs the devaluation in Plaintiff's Property by the void DoT's continued existence and enforcement. The Assignment 2 is an illegal contract made and recorded by SELENE, at the direction and on behalf of BANA, in violation of California title laws and the DoT, however their presence on the title to the Property remains an adverse claim against Plaintiff' Property.

273. Plaintiff seeks a determination that the title to the Property is free of the encumbrance created by the illegal DoT, the assignments thereof, the NoD, and the eight NoTSs, and an order that they all be stricken from the Property's title record.

**CAUSE OF ACTION NINE**
**WRONGFUL FORECLOSURE**
**Against BANA, RECONTRUST, WOLF, SELENE, and the REMIC**

274. Plaintiff hereby reincorporates all of the previously numbered paragraphs into this cause of action as if they were each individually pled herein.

275. On November 23, 2001, RECONTRUST initiated nonjudicial foreclosure actions against Plaintiff by the filing of the Recontrust NoTS 1 on behalf of BAC, and continued the nonjudical foreclosure against Plaintiff with the recording of the Recontrust NoTSs 2-4, all on behalf of BAC.

276. However, neither BAC, nor RECONTRUST, had authority to initiate nonjudicial foreclosure because the DoT had been void since June 2008, and there was no valid power of sale to rely upon. Further, BAC and RECONTRUST failed to issue a notice of intent to accelerate, and failed to first file a notice of default. For those reasons, BAC and RECONTRUST were foreclosing without authority to do so.

277. On May 2, 2014, WOLF, on behalf of BANA, filed the NoD against the Property, however, there was never a substitution of trustee executed or

recorded replacing WOLF for RECONTRUST as trustee of the DoT. Further, there was never any assignment executed or recorded transferring the DoT from COUNTRYWIDE or BAC to BANA. Also, the DoT had been void since June 2008, and therefore, there was no valid power of sale for which to foreclose upon.

278. On September 3, 2014 and again on February 5, 2015, WOLF, on behalf of BANA, filed a notice of trustee's sale against the Property. There still was never a substitution of trustee executed or recorded replacing WOLF for RECONTRUST as trustee of the DoT. Further, there was never any assignment executed or recorded transferring the DoT from COUNTRYWIDE or BAC to BANA. Also, the DoT had been void since June 2008, and therefore, there was no valid power of sale for which to foreclose upon. For those reasons, BANA and WOLF were foreclosing without authority to do so.

279. On November 4, 2015 and again on March 6, 2017, WOLF, on behalf of SELENE and the REMIC, filed a notice of trustee's sale against the Property. There still was never a substitution of trustee executed or recorded replacing WOLF for RECONTRUST as trustee of the DoT. Further, there was never any assignment executed or recorded transferring the DoT from COUNTRYWIDE or BAC to BANA, so BANA could not assign the DoT to the REMIC. Also, the DoT had been void since June 2008, and therefore, there was no valid power of sale for which to foreclose upon. For those reasons, SELENE, the REMIC, and WOLF were foreclosing without authority to do so.

280. However, in spite of the void DoT, the illegal assignments, the void NoD, and the eight illegal NoTSs, and lack of any authority whatsoever, WOLF, at the behest and direction of the REMIC and SELENE, continue to post and record notices of trustee's sale, threaten trustee's sale, and are intending on conducting an illegal and unauthorized nonjudicial foreclosure of the Plaintiffs' Property on April 3, 2017.

///

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

281. As a direct and proximate cause of this false claim to title and unauthorized foreclosure, Plaintiff has been prejudiced by the unlawful and unauthorized initiation and persecution towards and illegal sale of his Property. Plaintiff has thereby sustained general and special damages in an amount to be proven at trial.

Further, all of these defendants, and each of them, except JANET, have taken these actions with full knowledge of their unauthorized capacity, did these actions knowingly, willfully, and with intent to oppress Plaintiff with malice, and therefore, Plaintiff requests this Court to award Plaintiff exemplary and punitive damages as this Court deems appropriate.

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1. For an order permanently enjoining RECONTRUST, WOLF, SELENE, REMIC, and BANA from continuing its unfair business practices in violation of Business and Professions Code section 17200 as proven at trial;
2. For an order canceling the Assignment 1;
3. For an order canceling the Assignment 1;
4. For an order canceling the DoT;
5. For an order canceling the NoD;
6. For an order canceling the Recontrust NoTS 1;
7. For an order canceling the Recontrust NoTS 2;
8. For an order canceling the Recontrust NoTS 3;
9. For an order canceling the Recontrust NoTS 4;
10. For an order canceling the WOLF NoTS 1;
11. For an order canceling the WOLF NoTS 2;
12. For an order canceling the WOLF NoTS 3;
13. For an order canceling the WOLF NoTS 4;

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

14. For an order determining the title of Plaintiff' Property against the adverse claim of the DoT, purporting to encumber the Property, the two assignments, the NoD, and the eight NoTSs, which cloud the Property's title;

15. For an order determining that the Property's title is cleared of all interests other than Plaintiff's and JANET's;

16. For general damages in the sum proven at trial;

17. For special damages in the sum proven at trial;

18. For statutory damages in the sum proven at trial;

19. For punitive and exemplary damages in the sum proven at trial as determined proper by the Court;

20. For prejudgment interest at a rate of 10% per annum;

21. For post judgment interest at a rate of 10% per annum;

22. For attorney's fees and costs of suit;

23. For any other further relief the court may deem proper.

Dated: March 17, 2017

**PATEL | STILWELL, LLP**

*/s/ Andrew R. Stilwell*

ANDREW R. STILWELL, ESQ.
3160 Camino Del Rio South, Suite 313
San Diego, CA 92108
Telephone: (619) 940-6623
Email: AStilwell@PatelStilwell.com

Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: March 17, 2017

*/s/ Andrew R. Stilwell*

ANDREW R. STILWELL, ESQ.
Attorney for Plaintiff

PATEL | STILWELL LLP
Attorneys at Law
San Diego, California

## VERIFICATION

I am a party to this action, and I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF and know its contents. The matters stated in the VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 17, 2017, at Los Angeles County, California.

GARY KOOBA
Plaintiff